In this case, the court actually entered a very helpful order on December 1st stating three separate issues that it wanted the parties to argue, and I asked for supplemental briefing, so we're going to address those points in the same order that the court proffered them, the first one of them being the jurisdiction issue. This is a case in which the Municipality of Juana Diaz, a former defendant who exited very early in summary judgment before the case went to trial against two individual defendants, is hauled back into court actually more than a year after the judgment was entered to be held accountable and to be asked to pay that judgment based solely on an administrative ruling issued by the Secretary of Justice of Puerto Rico. There is no question that the Municipality of Juana Diaz ceased being a party back in 2010 when it was dismissed on summary judgment. Therefore, the only possible basis for an exercise of jurisdiction by the federal courts is ancillary execution jurisdiction, which is the first point in the court's December 1st order. Ancillary execution jurisdiction is a very peculiar and a very specific type of power that is granted to the federal courts to enforce a judgment against third parties, but it's usually used against parties who have funds belonging to the debtor-by-judgment, for instance a bank. The court may use ancillary enforcement jurisdiction against a bank to ask the bank to deposit funds belonging to the debtor-by-judgment to pay for the judgment. But in this case, the court is not asking the Municipality of Juana Diaz to pay the judgment from funds belonging to police officers, but it's asking to pay the judgment from municipal funds. In the case of Pickup v. Thomas in 1996, the Supreme Court revisited the ancillary jurisdiction of the federal courts to execute judgments, and it stated that it has never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. And definitely, the Municipality of Juana Diaz was not already liable or liable at all for that judgment. This judgment was entered imposing liability exclusively on these two policemen under respective individual capacities. But isn't the opposing argument simply that under the indemnification statute, Law 9, it does become liable? Well, it does not become liable. It may be asked to indemnify, and we believe that there is an important distinction between liability and indemnification. Indemnification under Law 9 is not automatic. And that is what distinguishes this case from some of the cases that were pointed to by the court in its December 1st order. But let's say, hypothetically, let's say that the Department of Justice determination was correct and valid and there was nothing wrong with that determination. Would there then be liability? There may be indemnity, not liability. Still not liable. Okay. Because what Law 9 does is provide a benefit to public officials, first of free legal representation and then of potential indemnification for adverse judgments. And there are several... So are you saying that the police officers would have to pay the judgment first and then seek the funds? What's the distinction here? Why can't those funds be reached in the first instance? By the federal courts? Well, in this particular case, the municipality is challenging the validity and is arguing... No, but stick with my hypothetical, though. Okay. If the Department of Justice's determination on indemnity had been correct across the board, could those funds then be reached by the federal court? I believe if it had been correct and it had been final and there had been no argument, it would be similar to the cases in which indemnification is automatic. And arguably, yes, the federal court could have reached them. But that is not the case here. Okay. In this case, the jury dismissed the federal claims against the police officers and entered a judgment based exclusively on the Puerto Rico law on negligence, which is not covered by Law 9. And the municipality has a host of other arguments against the Secretary issuing Ex Parte Suas Ponte an order for the payment of this judgment. Counsel, you say you have a host of other arguments. I mean, the district court pointed out that years went by. I mean, you never challenged anything. You could have challenges in the state court, right? There was at least, even though I gather at the time you couldn't participate in the administrative hearing itself, the decision was rendered. You could have challenged that in court, but you didn't do anything. And so it's way, way too late to do any of that. So these arguments that you said you have, you would like to make, the district court said it seems to me, quite rightly, this is now a final determination of the Secretary of Justice, and it's way too late for the municipality to try to raise all of these arguments now. And I think the importance of that is there really are no arguments to be made in the federal court about whether this was a good or a bad order. Well, Your Honor, the thing is that the district court was clearly mistaken in making that assessment because there was no possible challenge that at the time that this ruling that was rendered without any input by the municipality was rendered, the municipality could challenge it on appeal. As a matter of fact, the municipality of Fajardo versus Secretary of Justice case that the Puerto Rico Supreme Court decided in 2012, in which we participated as amicus curiae, came before the court on a declaratory judgment action that was filed by the municipality of Fajardo and made its way all the way up to the Supreme Court. Right, because that all happens later, and that decision does not apply to this municipality because there's no retroactive application of that decision. Well, what I was getting to, the court points to a statute within the 09 saying that judicial review could have been sought, that the particular statute, and I'm going to go to the specific section that is invoked by the district court. It's the section that deals with the denial of legal representation to officers. That does not apply. The fact is that the municipality of Fajardo court held, as a matter of fact, that a procedure for review had to be instituted because none existed. So the district court cannot ask the municipality of Juan Adias. But Fajardo figured out how to get the issue in front of a court. And that is what we explained in our brief. When the municipality of Juan Adias gets its resolution, the municipality of Fajardo case was already before the Supreme Court. So we had a tactical decision to make. If we filed a declaratory judgment case in the court of first instance, by the time it's decided, the Supreme Court of Puerto Rico is going to issue a ruling, and that ruling is going to govern whatever our case is dealing with. So we decided that we asked for an amicus intervention, which was granted by the court and noted by the Supreme Court, so that the Supreme Court could hear our arguments on this issue. And it is explicitly stated in the Supreme Court's opinion that municipality of Juan Adias intervened as amicus curia. The question that I have, and I probably shouldn't know the answer, is that opinion retroactive to your situation? Yes. Why? First of all, the opinion does not contain a statement of prospectivity. And what the court holds is that law 9, specifically the section that awarded the secretary seemingly absolute authority to compromise municipal funds, was legislated in the 1970s, and that thereafter, the Puerto Rico legislature legislated the Administrative Procedure Act in 88, and most importantly, the Autonomous Municipalities Act in 1991, and that those two pieces of legislation changed the type of discretion that the Secretary of Justice had, and the way in which the Secretary of Justice had to conduct proceedings. And the resolution issued in this case, which was issued I believe in 2011-2012, was certainly after 1991, after the Autonomous Municipalities Act was issued, and it's a matter of due process. What the Supreme Court of Puerto Rico holds is that ever since 1991, municipalities are considered autonomous in terms of their fiscal ability and the way they manage their money, and therefore, an appointed official, not an elected official, the Secretary of Justice, cannot dispose of those funds without affording the municipality an opportunity to be held. Sir? What was the date when the opinion was issued in the district court in this case? Well, the final opinion, because it had a very peculiar, the parties had agreed to magistrate judge, consented to proceed before a magistrate judge. When plaintiffs moved for execution, the matter was referred to the magistrate judge who had decided the case, who had been recalled. He then said that since we had not consented, he should open the order. He retracted. The district court then asked us to consent again. We consented again. And the opinion was issued, the final opinion by the second magistrate, was issued on March 19, 2014. This case has been on appeal for a while. We appealed this on 2014. 2014, yes. So, Counsel, it's your position that the Solicitor General, in its brief, is this wrong in its analysis of the law of Puerto Rico on this retroactive question? Yes. They're definitely wrong, and definitely they have a vested interest in prospective application because they may fear that judgments that may have been paid already may be questioned if application is retroactive. But what the Supreme Court of Puerto Rico is clearly doing in the Municipality of Fajardo case is saying what the law has been since 1991. So, therefore, it is not prospective. It is simply clarifying that since 1991, certain safeguards had to be given in this process that are not being given, and that is why it orders that a regulation devises a new proceeding with appellate review available. Thank you. Good morning to the Honorable Court. Jose Ramon Rodriguez on behalf of the respondent. Definitely. Okay, beginning on that note, no law which is silent on whether its application will be prospective or retroactive can be assumed to be retroactive. Every law which is intended to take a retroactive effect needs to contain in its body a date until which it can go back because if it has no date to go back, then all the cases decided pursuant to that law will have to be vacated to the origins of the law. So, I don't believe that the law can be taken to be retroactive. Well, that's one of the things the Solicitor General worries about in the brief, right, the implications of that retroactivity. Yes, Your Honor. Yes, and even though the case law allows the district court to make determinations about indemnifications when it doesn't have to go into new theories of law, in this case that determination is already done by the Secretary of Justice of Puerto Rico and as the municipality has admitted today, they just strategically chose not to challenge the decision of the Secretary of Justice. So, they cannot have it both ways. Well, the decision here by the Secretary of Justice was in 2011, the indemnification decision, right? Yes. The Fajardo case was filed considerably before that, wasn't it? Yes, Your Honor. The Supreme Court decided it in 2012. So, if there had been a request for an execution order in this case while the Fajardo case was pending and the district court had said, I'm going to wait for a decision from the Puerto Rico Supreme Court, what would be the result then? Well, if they had filed a challenge to the Secretary of Justice. No, I'm going to wait for the Fajardo decision. Well, if they had to first appeal the Secretary of Justice decision and then ask the Secretary of Justice to wait also. So, the district court would have been wrong to stay the issuance of an execution order in those circumstances? Not really. I don't quite understand. What happens before the Secretary of Justice? Does he hold a hearing? Does he call the parties? Or does he just issue a ruling based on documents that somebody presents to them? At that moment, there was a procedure, Your Honor. What? There was a determination by the Secretary of Justice based on the file, and he will notify the affected municipality in order for the municipality to present any challenge or any appeal to that decision, which in this case, the municipality did not appeal. Well, I don't usually rely on body language, but your opponent is shaking his head that there's no such procedure that took place. Now, are you confident in what you just said? Yes, Your Honor. How would I know? The law, the law 9. The law 9 says there's a procedure? Yes, Your Honor. And it includes notification to the parties? Yes. And the record in this case shows that this procedure was followed? No, Your Honor, that's not an issue here. It's never been an issue. It seems to be an issue now. Well, that's not on the record, Your Honor. No? Okay. It's just, you know, based on rather bad thinking, intuition is never a good way to decide cases, and I'm not about to do it here, but it seems to me that if a party is going to be usually, due process requires, if a party is going to be held to pay, I think, $55 million or whatever it is, I don't remember how many millions, but a lot, they should have some kind of a hearing or notification, and I want to be sure that's happened in this case. Yes, Your Honor. That's what happened later in that the Supreme Court decided that the law should be modified to afford that due process. But at the time that this case was decided, at the Justice Department office, the municipality did not appeal. It did not raise any challenges, and it cannot ask this court to review that decision now. So, Counsel, one of the questions that we asked for supplemental briefing on was whether the municipal property can be attached. Is there an attachment in place in this case? In my opinion, Your Honor, law 9 serves basically as that. It tells the municipality you must, with this order, you must separate those funds from your budget in order to pay for that judgment. You're saying there is an attachment in this case? Well, I believe... I was going to suggest to you that we don't have to answer that question because there is no attachment,  Well, in any case, that could be viewed as an attachment, but it's provided by law 9. It would be under the law. Well, what you described doesn't sound like an attachment. It sounds like it would be an order of some kind to the municipality. There's no attachment. There's no lien encumbering the property of the municipality. There would be an order to the municipality to set aside funds in its budget to pay this judgment. Is that what you're describing? Yes, that is precisely what the Secretary of Justice does. It orders the municipality to set aside those funds. And consistent with what the Secretary of Justice has ordered, it would be your position that the federal court, in order to, in effect, execute the judgment that's been issued in this case, that it can enter an order to the municipality to pay that judgment? Yes. Your Honor, yes. But that's short of an attachment. Wouldn't you agree? Yes, Your Honor. Just an order to do something is not an attachment of property. Thank you. Thank you, Your Honor.